[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Jack Crescimanni appeals a decision of the department of liquor control denying his application for a permit for the sale of alcoholic liquor in a care. Although the plaintiff names the liquor control commission as the defendant in this case, it was the department that denied his application pursuant to the applicable statute, and the court considers it as the actual defendant. The department acted pursuant to General Statutes § 30-46(a)(3). The plaintiff's appeal is authorized by §§ 30-60 and 4-183. The court finds the issues in favor of the plaintiff.
The facts essential to the court's decision are not in dispute. The plaintiff applied to the department for a permit to sell liquor in a care at 50 Union Place in Hartford. The location of the premises is in a zone that permits such establishments, and there was a licensed care there immediately prior to the plaintiff's acquisition of the premises.
In his application and published notice, the plaintiff indicated his intention to provide several kinds of live CT Page 10341 entertainment including disc jockeys, comedians, magicians and "exotic dancers." The latter proposed feature inspired some public opposition and the department's investigators found other defects that required correction. These problems caused the department to decide to hold a hearing on the application.
At the hearing, which was conducted by, the chairman and two-members of the commission, the plaintiff and his associates presented evidence that led the commissioners to dismiss all objections to the permit except "Suitability of Premises under Statutory Section 30-46(3)."
With regard to the "suitability" issue, the plaintiff and his associates testified that they planned to present female dancers clad in "bikini type attire" who would perform continuously while the care is open. They testified that they would comply with the department's regulations concerning that kind of entertainment, specifically stating that the dancers would not wear less than the minimum clothing required by those regulations. See Regs., Conn. State Agencies § 30-6-A24(d) and (e). The plaintiff also presented numerous written statements from other business owners in the area that supported his proposed establishment.
In opposition to the plaintiff's application, there were numerous written statements, including those from the mayor of Hartford, the Greater Hartford Transit District, the Greater Hartford Chamber of Commerce, and Business for Downtown Hartford, Inc. In addition, representatives from those organizations appeared at the hearing and testified as to their opposition. All of the evidence and testimony in opposition to the plaintiff's application centered on his plans to have female dancers performing in the cafe. In essence, the opposition was to the effect that it would be "inappropriate" or "detrimental to the public interest or not suitable" to permit the operation of a care featuring that kind of activity at that location. Some of those who testified in opposition stated that they had no objection to a care on the premises but objected only to the proposed entertainment.
Following the hearing, the commissioners rendered their final decision for the department. The decision was based solely on General Statutes § 30-46. The decision refers to "Section30-46(3)," but the context indicates and counsel's brief to the court confirms that subsection (a)(3) is the specific statutory authority upon which the department relies. CT Page 10342
In its decision, the department noted that there are "high expectations for community improvement and growth, particularly in the area of business expansion and tourism." The decision notes the proximity of the premises to the railroad station "which is a focal point for many of these plans and where substantial renovations are to take place." The department summarizes the testimony and evidence in opposition to the plaintiff's application as indicating "that the existence of entertainment in the form of exotic dancers would be inconsistent with these undertakings and plans and that the granting of this permit with live entertainment of the type proposed by the Applicant would be detrimental to the public interest."
The commissioners concluded that the opposition evidence was of such a "broad-based nature" that "the opinions set forth therein must be weighed and respected as indicative of what constitutes the public interest." Based on that conclusion, the commissioners determined that granting the application would be "detrimental to such public interest." The department thereupon denied the application, citing § 30-46.
In his appeal to this court, the plaintiff contends that the statute does not authorize the department to deny an application for a permit on the sole basis of detriment to the public interest. The court agrees.
Section 30-46(a)(3) reads in its entirety as follows:
 (a) The department of liquor control may . . . refuse to grant permits for the sale of alcoholic liquor if it has reasonable cause to believe: . . . (3) that the number of permit premises in the locality is such that the granting of a permit is detrimental to public interest, and, in reaching a conclusion in this respect, the department may consider the character of, the population of, the number of like permits and number of all permits existent in, the particular town and the immediate neighborhood concerned, the effect which a new permit may have on such town or neighborhood or on like permits existent in such town or neighborhood.
Our Supreme Court has repeatedly and consistently held that this statute allows the department to refuse to grant a permit if it reasonably determines that the new permit would be detrimental CT Page 10343 to the public interest because of the number of permits already existent in the locale under consideration. In determining whether or not the addition of a new permit would result in an excessive number, the department may consider the factors specified in the statute, including "the effect which a new permit may have on such town or neighborhood." Williams v.Liquor Control Commission, 175 Conn. 409 (1978); Campisi v.Liquor Control Commission, 175 Conn. 295 (1978); Divirgilio v.Liquor Control Commission, 134 Conn. 143 (1947); Biz v. LiquorControl Commission, 133 Conn. 556 (1947).
Although the cited cases hold that the department has broad discretion in determining what is an excessive number of permits for a given locale, they do not contain any suggestion that the department may deny a permit based solely on other considerations, without reference to the number of existing permits. Indeed, in the frequently cited case of Biz v. LiquorControl Commission, supra 563, the court held that the statute "is not concerned with the character of the applicant's plot or building, but is concerned with the fact that the saturation point may be reached with regard to the number of permit premises."
In the present case, there was no evidence presented to the commissioners concerning the number of permits already existing in the neighborhood or in the city of Hartford, nor did the department seek any such evidence. As the decision makes clear, the commissioners did not consider at all whether "the saturation point may be reached with regard to the number of permit premises" if the plaintiff's permit were granted. Instead, the department denied the application solely on the basis that the character of the entertainment to be offered by the applicant, although not illegal, would be detrimental to the public interest.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(f) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light PowerCo. v. Dept. of Public Utility Control, 219 Conn. 51, 57 — 58 CT Page 10344 (1991).
The court must also approach with caution a decision of an administrative agency that rests on the agency's interpretation of a statute that it is responsible for enforcing. "Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement."Starr v. Commissioner of Environmental Protection, 226 Conn. 358,372 (1993).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v.Administrator, Unemployment Compensation Act, 209 Conn. 381, 385
(1988).
Based on the cases cited above this court holds that the statute does not allow the department to refuse to grant a permit solely on the basis of public policy considerations that are unrelated to the number of permits already existing in the locale This interpretation is supported by the language in the statute that plainly limits the authority of the department to refuse a permit to those instances where it finds that "the number ofpermit premises in the locality is such that the granting of a permit is detrimental to public interest." (Emphasis added). It is only when the department is "reaching a conclusion in this respect" that it may consider factors such as the character of the particular neighborhood or town or the effect that a new permit might have on the locality.
In the present case, the court concludes that the commissioners, acting for the department, erroneously applied the provisions of § 30-46(a)(3). Specifically, that statute does not allow the department to refuse to grant the plaintiff a permit on the sole basis that the kind of entertainment he proposed to present would be detrimental to the public interest. As indicated, there was no evidence presented at the hearing that CT Page 10345 granting the plaintiff a permit would result in an excessive number of permits either in the neighborhood or in the city as a whole. The commissioners simply did not consider that issue, and, indeed, the plain implication of their decision is that the plaintiff's application would have been granted but for the kind of entertainment he planned to offer. Since that kind of entertainment is not prohibited by any statute or regulation, the refusal to grant the permit was an abuse of discretion. For these reasons, the plaintiff's appeal must be sustained.
In concluding that § 30-46(a)(3) restricts the department of liquor control's consideration of various public interest factors, the court notes that the community is not powerless to act for itself to identify and protect those interests. When the community desires to regulate the location of certain kinds of businesses, as seems to be the case here, it may do so by means of its zoning ordinances. "The object of zoning, primarily, is to promote the health, safety, welfare and prosperity of the community." Stephen Reney Memorial Fund v. Town of Old Saybrook,4 Conn. App. 111 (1985). In this regard, the court also notes that General Statutes § 30-44 requires the department of liquor control to refuse to grant a liquor permit where the sale of liquor is prohibited by a zoning ordinance.
General Statutes § 30-60 authorizes an applicant for a permit whose application is refused to appeal to this court "in accordance with the provisions of section 4-183." The statute further provides, "If said court decides, upon the trial of such appeal, that the appellant is a suitable person to sell alcoholic liquor and that the place named in his application is a suitable place . . . and renders judgment accordingly, . . . the department shall thereupon issue a permit to such applicant." Our Supreme Court has construed this statute to mean that. "the appeal should be heard on the record before the commission, including its reasons for its action and the transcript of evidence." Hoffman v. Kelly, 138 Conn. 614, 619 (1952).
Similarly, subsection (i) of § 4-183 provides, "The appeal shall be conducted by the court without a jury and shall be confined to the record." Subsection (j) provides that if the court finds that the agency's decision is in violation of the statutes or affected by other error of law, "it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings." Subsection (k) provides, "If a particular agency CT Page 10346 action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the agency decision, orders the particular agency action, or orders the agency to take such action as may be necessary to effect the particular action."
The court has examined the entire record of the administrative proceedings in this case, including the transcript of the public hearing. In addition, the court has noted especially the finding of the commissioners as stated in their final decision, that "As a result of evidence produced at the Hearing by the Applicant the charges of Interior Access to Permit Premises, Financial Suitability, Suitability of Applicant, and Failure to Cooperate were dismissed. The remaining charge atissue and the subject of this decision is Suitability of Premises under Statutory Section 30-46(3). Another charge under Section30-46(5) is not pursued by the Commission." (Emphasis added). The administrative record and the final decision thus make clear that the only reason the department had for denying the permit was the commissioners' conclusion that it would be "detrimental to (the) public interest." Since the court has determined that the commissioners' conclusion in that regard was not in accordance with the applicable law, the department has no authority to deny the application.
The appeal is sustained, and the case is remanded to the department with instructions to grant the plaintiff's application upon his compliance with all provisions of the applicable statutes and regulations.
MALONEY, J.